NELSON A. MURRAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Murray v. Commissioner
Docket No. 10342-75.
United States Tax Court
T.C. Memo 1978-352; 1978 Tax Ct. Memo LEXIS 161; 37 T.C.M. (CCH) 1479; T.C.M. (RIA) 78352; September 7, 1978, Filed *161 Pursuant to a judgment dissolving the marriage of petitioner, petitioner transferred to his wife his interest as a tenant by the entirety in both the personal residence and in certain lots. In the judgment dissolving the marriage, petitioner's wife waived all rights to alimony or support. The judgment did not mention a "special equity" claim of petitioner's wife set forth in her answer to the dissolution petition of petitioner. Held, the transfer of property interests by petitioner was in exchange for marital rights of his wife and therefore taxable to petitioner. United States v. Davis,370 U.S. 65 (1962). W. Robinson Frazier,William R. Frazier and Samuel L. Payne, for the petitioner. William R. McCants, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, *162 Judge: Respondent determined a deficiency in the income tax of the petitioner for the calendar taxable year of 1972 in the amount of $ 29,611.83, together with an addition to the tax of $ 1,480.59 under section 6653(a). [1] Respondent subsequently conceded petitioner is not liable for the addition to the tax. Because of concessions made by the parties, the issue remaining for decision is whether petitioner realized gain on the transfer of his interest in certain jointly owned real property to his wife pursuant to a judgment dissolving the marriage between petitioner and his wife. [2]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference. At the time of the filing of the petition herein, petitioner resided in Jacksonville, Florida. He filed an individual Federal income tax return for the taxable year 1972 with the Director of the Southeast Service Center, Chamblee, Georgia. Petitioner *163 and Mary J. Murray were married on June 10, 1938. They lived together as husband and wife until December 1970. As a result of the marriage, they had three children. On April 4, 1972, the marriage was dissolved by the Fourth Judicial Circuit Court, Duval County, Florida. At all times material herein, petitioner was a doctor of medicine practicing in the field of pathology. In 1952, he set up a pathological laboratory as sole proprietor. He maintained a staff there which performed chemical tests, urine tests, blood tests, anatomical diagnostic biopsies, autopsies and related activities. For the most part, such services were performed on a referral basis for other doctors. During the period from 1952 until December 18, 1970, Mrs. Murray worked at the pathological laboratory. She performed a variety of services, including office manager, bookkeeper, secretary and general manager. During the period that she was raising her three children, she was at the laboratory part time and spent the rest of her time at home. When Mrs. Murray ceased to be employed at the laboratory, additional clerical staff was engaged to perform the same services. As a result of an automobile accident, *164 petitioner was hospitalized continuously for approximately five to six months in 1967 and 1968. During that time, Mrs. Murray managed the laboratory and assumed some of petitioner's administrative duties. The medical services were performed by other pathologists on a temporary basis from Mayo Institute. Mrs. Murray received no salary for her work at the laboratory until about 1968, when she was paid a salary of $ 1,025 per month. On December 18, 1970, the parties were separated and Mrs. Murray was no longer permitted to work at the laboratory. Petitioner continued to make such payments to Mrs. Murray, depositing the check in her bank account when she refused to endorse the checks. The gross fees, operating expenses and net profits from the laboratory for the taxable years 1968 to 1972, inclusive, were as follows: Gross Fees
Total Operating
Net Year
Received
Expenses
Profit
1968
$ 206,714.64
$ 145,665.64
$ 61,049.00
1969
211,765.85
118,128.79
93,637.06
1970
219,528.50
122,370.85
97,157.65
1971
200,327.95
109,799.35
90,528.60
1972
187,338.00
110,736.29
76,601.71
All the receipts of the laboratory went into a joint bank account *165 of petitioner and Mrs. Murray. Although Mrs. Murray was authorized to write checks on the account, the checks she wrote were mainly for expenses. At the time of the dissolution of their marriage, petitioner and Mrs. Murray owned, as tenants by the entirety, a residence located at 5164 Yacht Club Road, Jacksonville, Florida. As of April 4, 1972, the fair market value of such residence was $ 182,000. Mrs. Murray had contributed $ 10,000, which she received as a gift from her parents, towards the purchase of that residence. From time to time Mrs. Murray had also invested small sums in the laboratory business. Petitioner and Mrs. Murray also owned certain unimproved properties, some held jointly, including certain lots in Orange Park, Florida, and others in the name of Mrs. Murray, individually. On January 10, 1972, petitioner filed a Petition for Dissolution of Marriage in the Circuit Court, Fourth Judicial Circuit, Duval County, Florida, for a dissolution of the marriage between petitioner and Mrs. Murray. On January 31, 1972, Mrs. Murray filed an answer opposing the dissolution of the marriage and further alleging: 4. The wife further alleges that the husband and wife *166 are the co-owners of a laboratory business which has been in existence for many years. That the wife herein has for a long period of time worked in said business, and materially contributed to its establishment as a highly profitable medical laboratory. That such work has been over and above that normally contributed by a wife, and she has materially contributed to the economic wellbeing of the parties. That said wife believes that she is entitled to a portion [sic] equity in the income of said laboratory as a result of her contribution over and above that normally allowed as and for alimony payments. Said wife requests and prays this Court to declare such interest to be a lien upon the income from said medical laboratory. 5. Further, the respective parties hereto own as estate by the entireties a residence and furniture and furnishings located at 5164 Yacht Club Road, Jacksonville, Florida, which said residence the wife needs as a home. 6.Further, that the wife herein is without employment and without funds other than that received from the husband, and is therefor [sic] unable to support herself and pay the costs of these proceedings and a reasonable attorneys [sic] *167 fee, and affirmatively prays for such relief and for alimony, both temporary and permanent. * * *
On April 4, 1972, a final judgment was entered dissolving the marriage between petitioner and Mrs. Murray pursuant to a stipulation filed by the parties. The stipulation provided, inter alia, as follows: 1. Husband agrees to convey to Wife all of his right, title and interest in and to the home of the parties located at 5164 Yacht Club Road, Jacksonville, Florida, 32210, and the furniture and fixtures therein subject to the mortgage which encumbers same, and by the acceptance of the deed of conveyance, Wife shall assume and agree to pay said mortgage and hold Husband harmless from any and all further liability thereon. Documentary stamps are Wife's responsibility. 2. Husband agrees to convey to Wife all of his right, title and interest in and to the jointly owned lots located in Orange Park, Florida, which lots are located in the subdivision known as Doctors Lake Estates. Documentary stamps are Wife's responsibility. 3. Husband agrees to transfer to Wife title to the 1971 Buick Riviera automobile. 4. Husband agrees to deliver to Wife $ 7,500.00 of Jax Utilities *168 bonds or their cash equivalent. These will be delivered to Wife upon her delivering the information and executing the documents referred to in paragraph 6, infra. 5. Wife shall be responsible for paying her own attorney of record for all of his services rendered or to be rendered herein, and for all Court costs incurred by her in connection with these proceedings. In addition thereto, Wife waives any right she might have to alimony or support of whatsoever nature or kind from Husband. * * *
Pursuant to the judgment of the Court, petitioner transferred to Mrs. Murray the interest which petitioner held as a tenant by the entirety in both the residence on Yacht Club Road and in the lots in Orange County, Florida. In his notice of deficiency, respondent has determined that petitioner realized a gain of $ 85,300 on the transfers, computed, as follows: One-half share of jointly owned residence
$ 125,000
Cost basis of one-half share
44,200
Gain
$ 80,800
One-half share of jointly owned lots
$ 12,000
Cost basis of one-half share
7,500
Gain
$ 4,500
Total Gain on transfer of both properties
$ 85,300
OPINION Petitioner and Mary J. Murray were husband *169 and wife. After more than 30 years of marriage, they were separated in December 1970, and the marriage was dissolved by the judgment of the Court on April 4, 1972. As part of that judgment, petitioner transferred to Mrs. Murray his interest as tenant by the entirety in the family residence, subject to the mortgage thereon and in certain unimproved lots of agreed value of $ 24,000. The parties have also stipulated that the fair market value of the residence as of the date of such transfer was $ 182,000, at which time it was subject to a mortgage of $ 12,000. Petitioner's basis was $ 44,200. Accordingly, respondent has determined that the petitioner realized taxable gain measured by the difference between his basis in each property and the value of the interests transferred under the authority of United States v. Davis,370 U.S. 65 (1962) and the cases following that decision. McKinney v. Commissioner,64 T.C. 263 (1975); Stephens v. Commissioner,38 T.C. 345 (1962). The petitioner contends that the transfer was merely a division of property held by husband and wife as tenants by the entirety on account of which no gain or loss *170 is recognized, citing Beth W. Corp. v. United States,350 F. Supp. 1190 (S.D. Fla. 1972), affd. 481 F.2d 1401 (5th Cir. 1973). Petitioner argues that there was a transfer or division of property of the marital community consisting of an exchange of petitioner's interest in the family residence and lots for Mrs. Murray's "special equity" interest in the petitioner's practice to which she was entitled under Florida law on account of her many years of service as the receptionist, bookkeeper, clerk and office manager of the laboratory. In Beth W. Corp. v. United States,supra, the Court was called upon to determine the basis in certain land which the taxpayer had acquired in exchange for its stock. That basis depended upon the basis of the transferor of the property which had been held by her and her husband during their marriage as tenants by the entirety.When the parties were divorced, the commonly held property was divided equally between them. The transferor's former husband conveyed his interest in the land to her and she in turn conveyed her interest in other property of equal value to the husband. On the facts, the Court held *171 that there had been an exchange of property on which gain or loss was not recognizable in the division of commonly held property between husband and wife, distinguishing Davis v. United States,supra.
Under Florida law a wife may acquire a "special equity" in the business or property of her husband of the contribution by her of either her resources or services to such business or in the acquisition of such property. Heath v. Heath,103 Fla. 1071, 138 So. 796 (1932). Mrs. Murray's contributions to petitioner's medical practice may well have exceeded what might have been expected from the "dutiful wife." See, for example Welsh v. Welsh,160 Fla. 380, 35 So.2d 6 (1948); Roberts v. Roberts,101 So.2d 884 (Fla. 2d Dist. 1958). It is undisputed that she served long and faithfully as the office manager of the laboratory. For the most part she received no salary for such services.Since the income from the practice went into a joint bank account, she may well have felt that such income was equally available both to her and to her husband. However, Mrs. Murray's claim to a "special equity" in her husband's practice has never been *172 adjudicated. It was never at any time acknowledged by the petitioner. It was merely one of several claims incorporated by her attorney in her answer to the petition in seeking a dissolution of the marriage. In this proceeding, petitioner is seeking to treat Mrs. Murray's claim for "special equity" as a form of co-ownership in the business having ascertainable value and susceptible of being exchanged by her for other property of equal value in a division of the marital assets. The record in this case does not go this far. Petitioner has failed to prove that Mrs. Murray had a property interest in his practice which could be exchanged for his interest in the family residence as a like exchange or division of marital property. Petitioner was a practicing medical doctor. The business in question was the practice of pathology. Mrs. Murray was not a doctor. She could not have acquired an interest in that practice, even if she had established her claim to a "special equity." At most, she would have been entitled to an interest in the joint bank account or a monetary claim on the petitioner's future earnings as a pathologist. Engebretsen v. Engebretsen,151 Fla. 372, 11 So.2d 322 (1942); *173 Heath v. Heath,supra.
The money from the joint bank account went into the couple's living expenses, including payments on the house. Mrs. Murray already owned an undivided interest in the house. A claim on the future earnings of Dr. Murray on account of a "special equity" in the laboratory would be like alimony, a monetary claim. Even if Dr. Murray's interest in the house was treated as having been transferred partially in satisfaction of that claim, the result would be the same. Bosch v. United States, an unreported case, ( M.D. Fla. 1976, 38 AFTR 2d 76-5830, 76-2 USTC par. 9651). In the absence of any settlement, Mrs. Murray would have been awarded substantial alimony by the Court. She had been married to petitioner for about thirty-four years. Three children were born and had grown to adulthood during that time. Mrs. Murray enjoyed a comfortable standard of living. She was 58 years old with her best income-producing years behind her. Petitioner had a profitable pathological practice. The Court would have considered these elements in deciding upon Mrs. Murray's prayer for alimony. Fla. Stat. Ann., Sec. 61.08 *174 (1971); Tanner v. Tanner,194 So.2d 702 (Fla. 2d Dist. 1967); Gordon v. Gordon,192 So.2d 514 (Fla. 1st Dist. 1966). It is thus clear from this record that in consideration of the property settlement incorporated in the judgment dissolving the marriage, Mrs. Murray relinquished a viable claim to alimony. Judged by the amounts paid to Mrs. Murray during the period of her separation and before the dissolution of the marriage, such alimony might well exceed $ 1,000 per month. She also relinquished any claim which she may have had on the future earnings of the petitioner in his practice of medicine. She could not lay any claim to an interest of the practice itself. No specific value can be assigned separately to the claims which she relinquished. However, such is not necessary for a decision in this case. Nothing was conveyed to the petitioner by Mrs. Murray. All petitioner obtained was the release by her of any claim for future maintenance and support, whether in the form of alimony or in the form of a "special equity" in his earnings as a doctor. In consideration of the foregoing, it is held that petitioner realized a gain on the transfer of *175 his interest in the residence and the lots measured by the difference between his cost or basis for the properties and the fair market value thereof on April 4, 1972. The basis or fair market value of such properties is not in dispute. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954. ↩
2. See companion case of Murray v. Commissioner,T.C. Memo. 1978-353↩.